UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Kujtim M., <br><br>　　　　　Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security,[1] <br><br>　　　　　Defendant. | Civil No. 3:21-cv-00205-TOF <br><br><br> July 27, 2022 |

**RULING ON PENDING MOTIONS**

The Plaintiff, Kujtim M.,[2] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting his application for Title II Disability Insurance Benefits ("DIB"). (Compl., ECF No. 1; Am. Compl., ECF No. 9.) He seeks an order reversing the Commissioner's decision and directing her "to make payment on [his] claim," or for "[s]uch other relief or judgment as the Court may deem just and equitable." (*Id.* at 4; *see also* Pl.'s Mot. for Order Reversing Decision, ECF No. 22.) In response, the Commissioner moved for an order affirming the decision. (Def.'s Mot. for Order Affirming Decision, ECF No. 25.)

---

[1]　　　When the Plaintiff filed this action, he named the then-Commissioner of the Social Security Administration, Andrew Saul, as the defendant. (Compl., ECF No. 1.) Commissioner Saul no longer serves in that office. His successor, Acting Commissioner Kilolo Kijakazi, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully directed to amend the caption of the case accordingly.

[2]　　　Pursuant to Chief Judge Underhill's January 8, 2021, Standing Order, the Plaintiff will be identified solely by first name and last initial, or as "the Plaintiff," throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

1

The Plaintiff raises only one issue on appeal – he argues that the Administrative Law Judge ("ALJ") erred in finding that his spinal and mental impairments did not meet a "Listing." (ECF No. 22-1, at 2, 4-6.) Having carefully considered the parties' submissions, and having carefully reviewed the entire administrative record, the Court disagrees and holds that the ALJ's decision was supported by substantial evidence and free from legal error. Accordingly, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 22) is **DENIED**, and the Commissioner's Motion for an Order Affirming the Decision (ECF No. 25) is **GRANTED**. The undersigned will therefore direct the Clerk of the Court to enter judgment in the Commissioner's favor, as set forth more fully in Section IV below.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In March 2019, the Plaintiff filed an application for DIB benefits under Title II of the Social Security Act. (R. 208.) He claimed that he could not work due to spinal problems that persisted after a surgical fusion of his L5 and S1 vertebrae. (R. 62.) He also attributed his incapacity to bilateral foraminal stenosis at the L4-5 level, radicular symptoms in his right lower extremity, and melanoma. (*Id.*) Months later, a claims examiner determined him to be "not disabled" (R. 74-88), and a second examiner affirmed that determination on reconsideration. (R. 89.) The Plaintiff then requested a hearing before an ALJ (R. 114-15), and ALJ John Aletta held a telephonic hearing on June 18, 2020. (R. 27-60.)

The ALJ issued an unfavorable decision on July 1, 2020. (R. 7-20.) Social Security ALJs are required to follow a five-step sequential evaluation process in adjudicating disability claims (*see* discussion, Section II *infra*), and ALJ Aletta's written decision followed that format. At Step One of his analysis, he found that the Plaintiff had not engaged in substantial gainful activity since his claimed disability onset date of September 15, 2014. (R. 13.) At Step Two, he found that the Plaintiff suffers from the severe impairments of "degenerative disc disease of the lumbar spine,

status post decompression and fusion of lumbar spine." (*Id.*) And although the Plaintiff had not included any mental impairments on his initial disability application, ALJ Aletta noted references to a depressive disorder in the medical records, and he addressed that condition at Step Two. (R. 13.) He analyzed the record evidence with respect to the Plaintiff's ability to perform basic mental work activities, and concluded that the depressive disorder was non-severe. (*Id.*) With respect to the Plaintiff's melanoma, the ALJ found that it had not recurred after surgery and, therefore, was non-severe as well. (*Id.*)

At Step Three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.) He then determined that, notwithstanding his impairments, the Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) with the following limitations: He must have the options to sit for up to five minutes after standing for twenty minutes at one time and the option to stand for up to five minutes after sitting for twenty minutes at one time, all while continuing to work. He can occasionally climb ramps and stairs; cannot climb ladders, ropes or scaffolds; can frequently balance; can frequently stoop; and can occasionally kneel, crouch and crawl. He cannot work at unprotected heights.

(R. 14-15.) At Step Four, the ALJ found that the Plaintiff was unable to perform any past relevant work. (R. 18.) Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to conclude that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including "ticket seller," "price marker," and "cashier." (R. 19.) Accordingly, the ALJ determined that the Plaintiff was not disabled from his alleged onset date, September 15, 2014, through the date last insured, December 31, 2019. (R. 20.)

The Plaintiff then filed this action on February 2, 2021. (Compl., ECF No. 1.) On June 7, 2021, the Commissioner denied the allegations of the complaint by filing the Certified

Administrative Record. (ECF No. 17; *see also* Standing Scheduling Order, ECF No. 3, at 2 (stating that, in the District of Connecticut, the filing of administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").) The Plaintiff then moved for an "order reversing the decision of the Commissioner" (ECF No. 22), and two months later the Commissioner moved for an order affirming the decision. (ECF No. 25.) The Plaintiff filed a "Reply to Defendant's Response to Plaintiff's Statement of Facts" (ECF No. 27), and briefing closed without either party requesting oral argument. The parties' motions are therefore ripe for decision.

## II.  APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments." *Id.* At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings." *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of his "past relevant work." *McIntyre*, 758 F.3d at 150. And at Step Five, the ALJ considers "whether there are significant numbers of jobs in the

national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.*

Importantly for this case, the claimant bears the burden of proof at Steps One through Four. *Id.* In particular, the "Plaintiff bears the burden at step three to show that his impairments meet or exceed all the medical criteria in a Listing." *Salerno v. Berryhill*, No. 19-cv-00627 (KHP), 2020 WL 882006, at *5 (S.D.N.Y. Feb. 24, 2020). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Although the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. In other words, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having

rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

**III.   DISCUSSION**

    **A.   Step Three – General Principles**

As noted above, the Plaintiff raises only a single argument on appeal – he says that the ALJ "made error in his finding that the claimant does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the" Listings. (ECF No. 22-1, at 4.) With respect to his spinal complaints, he does not identify the specific listing that he thinks the ALJ botched (*see id.* at 4-6), but presumably he means Listing 1.04; at the time of his claim, that was the Listing that addressed "disorders of the spine,"[3] and that is the Listing that the ALJ analyzed. (R. 14.) The Plaintiff also claims that his mental impairments satisfied Listing 12.04, the Listing for "depressive, bipolar and related disorders." (*Id.* at 6.)

The principles governing Step Three are well established. At that step, the ALJ considers the severity of the claimant's impairment, without regard to vocational factors. *See* 20 C.F.R. § 404.1525(a) (describing Listings as "impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience"). A claimant who satisfies a Listing at Step Three is entitled to benefits, and the evaluation of his claim ends there. Listed impairments are purposefully set at a high level of severity because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). When a claimant meets or equals a Listing, "he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id.; see also*

---

[3] The regulations have since been amended, and spinal disorders are now principally addressed by Listing 1.15. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (effective Apr. 2, 2021).

*Petrie v. Astrue,* 412 F. App'x 401, 404 (2d Cir. 2011) (observing that Step Three is "based solely on medical evidence," and if the claimant meets his burden he is "*per se* 'disabled' and thus presumptively qualified for benefits"). Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) ("[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.").

To meet a Listing, "a claimant must demonstrate that he suffers from all of the listed criteria, no matter how severe any one particular element of the listing may be." *Scully v. Berryhill*, 282 F. Supp. 3d 628, 636 (S.D.N.Y. 2017) (citing *Sullivan*, 493 U.S. at 530); *see also Rienna H. v. Comm'r of Soc. Sec.,* No. 1:19-CV-1085-DB, 2021 WL 168471, at *8 (W.D.N.Y. Jan. 19, 2021); *Monsoori v. Comm'r of Soc. Sec.,* No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019). To make this demonstration, the claimant must present medical findings "equal in severity to all requirements, which are supported by medically acceptable clinical and laboratory diagnostic techniques." *Beall v. Colvin*, No. 5:16-CV-92, 2017 WL 1155809, at *3 (N.D.N.Y. Mar. 27, 2017) (citing 20 C.F.R. § 404.1526(b)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. Put another way, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another," the claimant's condition does "not rise to the level of severity required by" the Listing. *Monsoori,* 2019 WL 2361486, at *4 (citing Acquiescence Ruling 15-1(4), 80 Fed. Reg. 57418-02, 2015 WL 5564523, at *57420).

### B. The Plaintiff's Spinal Issues

In this case, the relevant Listing for the Plaintiff's back issues was Listing 1.04, "disorders of the spine." To meet this listing, a claimant's spinal disorder must have "result[ed] in compromise of a nerve root . . . or the spinal cord," and produced any one of three additional conditions. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04 (effective through Apr. 1, 2021) (hereinafter "Listing 1.04"). First are the conditions listed in Listing 1.04A: "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [a] positive straight-leg raising test (sitting and supine)." Second are the conditions listed in Listing 1.04B: "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." Third are the conditions set forth in Listing 1.04C: "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." Elsewhere, the Listings define "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B.2.b.

Substantial evidence supports the ALJ's conclusion that Listing 1.04A was not satisfied. Courts in the Second Circuit have held that, to satisfy this Listing, all of its criteria must be "simultaneously present on examination and continue, or be expected to continue, for at least 12

months." *Mansoori*, 2019 WL 2361486, at *4; *accord Ramirez Morales v. Berryhill*, No. 6:17-cv-06836-MAT, 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019). Here, the record shows that while some of the listing criteria may have been present at some examinations, they were absent at others. After his back surgery in October 2015 and through his date last insured in 2019, the Plaintiff sought medical treatment for back pain with various providers, including Comprehensive Pain Management, Orthopedic Associates and Yale New Haven. At times the Plaintiff exhibited limited range of motion of the back – one of the required elements of Listing 1.04A – but at other times he had unrestricted range of motion. (*See, e.g.*, R. 555, 588, 608.) At times he had a positive straight-leg raising test – another required element – but at other times his test was negative. (*See, e.g.,* R. 378, 379, 404, 422.) And while he sometimes showed deficits in motor strength, at other times it was normal. (*See, e.g.*, R. 409.) The ALJ did not err in concluding that Listing 1.04A had not been met.

The Plaintiff did not meet Listing 1.04B either. As noted above, that Listing requires "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." In this case, the Plaintiff had no evidence of spinal arachnoiditis.[4] The absence of such evidence would be fatal to a Listing 1.04B claim. *Cf. Scully*, 282 F. Supp. 3d at 635 (declining to consider claimant's Listing 1.04B claim "[b]ecause his brief does not claim that [he] suffered from spinal arachnoiditis").

---

[4]   An online medical dictionary defines arachnoiditis as an "[i]nflammation of the arachnoid membrane often with involvement of the subjacent subarachnoid space." https://medical-dictionary.thefreedictionary.com/arachnoiditis (last visited July 26, 2022).

The same is true of Listing 1.04C. That Listing requires "[l]umbar spinal stenosis resulting in pseudoclaudication,[5] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." While the Plaintiff's medical records do reference foraminal stenosis (*e.g.*, R. 349), none of them document an "inability to ambulate effectively" as that phrase is defined in the Social Security regulations. To be unable "to ambulate effectively," a claimant must exhibit an "extreme limitation in the ability to walk," with "insufficient lower extremity functioning . . . to permit ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.00B.2.b. In this case, some of the Plaintiff's medical records document a normal gait (*e.g.*, R. 620, 628), full range of motion in all extremities (*e.g.*, R. 609, 620), and no use of assistive devices. (*E.g.*, R. 556, 568, 609.) The ALJ did not err in concluding that Listing 1.04C had not been satisfied.

The Plaintiff argues that the ALJ mishandled the evidence with respect to his spinal complaints (ECF No. 22-1, at 5-6), but these arguments do not carry his burden at Step Three. He says that the ALJ erred in characterizing several MRI reports as "essentially normal" when they actually showed a bulging disc and foraminal stenosis (*id.* at 5) (citing R. 334-52), but bulging discs and foraminal stenosis do not, on their own, satisfy any Listing. The Plaintiff faults the ALJ for citing his travel activity[6] (*id.*), but it is well established that an ALJ may consider a claimant's daily activities when evaluating his credibility and formulating his RFC. 20 C.F.R. §

---

[5] Pseudoclaudication is defined as "[p]ain in the lower extremities that develops when patients are standing for a long time. The pain is relieved by leaning forward or by sitting. It is caused by lumbar spinal stenosis and not by impaired blood flow through the aorta, iliac, or femoral arteries." https://medical-dictionary.thefreedictionary.com/pseudoclaudication (last visited July 26, 2022).

[6] The Plaintiff "traveled alone to Albania and he made two trips to New Jersey since the alleged [disability] onset date." (R. 16.)

404.1529(c)(3)(i); *Jordan v. Barnhart*, 29 F. App'x 790, 794 (2d Cir. 2002) (summary order) ("[I]f objective medical evidence is not sufficient to support a claimant's subjective allegations, the ALJ is required to consider various factors, including the claimant's daily activities."); *Dayle B. v. Saul*, No. 3:20-cv-00359 (TOF), 2021 WL 1660702, at *23 (D. Conn. Apr. 28, 2021). The Plaintiff notes that the ALJ "reached a different conclusion from the medical doctors" about how much weight he could lift (ECF No. 22-1, at 5), but he neglects to note that the ALJ's figure was *lower* than the doctor's. (R. 17-18) (noting that Dr. Stephen Lange had "limit[ed] the claimant to lifting no more than twenty-five pounds," but concluding that the Plaintiff should be limited "to lifting no more than twenty pounds"); *see also Jennifer Lynn E. v. Kijakazi*, No. 3:20-cv-00695 (TOF), 2021 WL 4472702, at *13 (D. Conn. Sept. 30, 2021) ("[W]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.") (citation omitted). Finally, the Plaintiff argues that the ALJ ignored a medical opinion that he "is completely disabled with no work capacity" (ECF No. 22-1, at 6), but the ALJ is not required to accept such an opinion. 20 C.F.R. § 404.1527(d); *Grisel A. v. Kijakazi*, No. 3:20-cv-00719 (TOF), 2021 WL 4350565, at *7 (D. Conn. Sept. 21, 2021) ("The Commissioner is not obliged to give any special significance to the source of such an opinion," because under the regulations, "[t]he final question of disability is expressly reserved to the Commissioner.") (ellipsis, quotation marks and citation omitted).

In short, the ALJ's conclusions with respect to the Plaintiff's spinal impairments were supported by substantial evidence and free of legal error. "It is not the function of this Court to re-weigh evidence or consider *de novo* whether [a claimant] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 291 (W.D.N.Y. 2021). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even

if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020).  Stated another way, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir. 1982)).

      **C.**      **The Plaintiff's Mental Issues**

In a cursory, two-paragraph argument, the Plaintiff contends that his mental impairments satisfy a Listing. (ECF No. 22-1, at 6.) He says that he was diagnosed with major depressive disorder, and he asserts that he is "no longer able to play with his children, he does not socialize, requires assistance with his daily hygiene and fees [*sic*] as if he is a burden on his friends and family." (*Id.*) (citing R. 750). He concludes by claiming that "[i]t can be reasonably concluded that [his] overall mental health condition meets Listing 12.04 Depressive, bipolar and related disorders." (*Id.*) The Plaintiff makes this argument even though he evidently did not think his mental impairments worthy of mentioning on his disability application (R. 208, 62), and even though he and his attorney made only oblique references to them at the hearing. (R. 33-51.)

When evaluating the severity of mental impairments, the ALJ must apply the "special technique" set forth in 20 C.F.R. § 404.1520a. This technique requires the ALJ to consider whether the claimant has a medically determinable mental impairment, and to rate the claimant's degree of functional limitation in four areas. 20 C.F.R. § 404.1520a(b). The four areas are the ability to (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the claimant's "degree of limitation in these areas" using "the following five-point scale:

None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). An "extreme" limitation is one "that is incompatible with the ability to do any gainful activity." *Id.*

Listing 12.04 is composed of Paragraphs A, B, and C, and to satisfy it, a claimant must satisfy Paragraph A and either Paragraph B or Paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. Paragraph A requires medical documentation of either a depressive disorder or bipolar disorder, with certain features. *Id.* Paragraph B requires extreme limitation[7] in one of the above-referenced four areas of mental functioning, or marked limitations[8] in two areas. *Id.*; *see also* §§ 12.00E1-12.00E4. To satisfy Paragraph C, a claimant's mental disorder must be "serious and persistent" – in other words, "when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years." Moreover, Paragraph C requires evidence of both (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminished the symptoms and signs of [the] mental disorder;" and (2) "[m]arginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §12.04.

In this case, substantial evidence supports the conclusion that neither the Paragraph B nor the Paragraph C criteria were satisfied. The Plaintiff's medical records frequently record normal mood and affect (*e.g.*, R. 373, 588, 619), appropriate cognition (*e.g.*, R. 555), and negative psychiatric/behavioral findings. (*E.g.*, R. 607, 610, 612.) He apparently met with his treating

---

[7] An "extreme limitation" means the plaintiff is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 12.00F2e.

[8] A "marked limitation" means the plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* at § 12.00F2d.

13

psychologist only three times. (R. 761-63.) When he was asked to explain in a "Function Report" how his "illnesses, injuries, or conditions" affected him, the Plaintiff listed only physical effects. (R. 260) ("I am limited in my ability to lift and carry items," and "can only sit, stand and walk for short period of time until I need to rest."). He expressly disclaimed any limitations in "[c]ompleting tasks," "[c]oncentration," "[u]nderstanding," "[f]ollowing instructions," or "[g]etting along with others." (R. 266.) He reported that he went out for coffee with others "once or twice a week," attended his children's "activities and social groups" "on a regular basis," and managed his own finances. (R. 263, 265.) This is not the stuff of "extreme" or "marked" limitation under Paragraph B, or of a "serious and persistent" mental impairment under Paragraph C. *See Dean v. Colvin*, 213 F. Supp. 3d 367, 371 (N.D.N.Y. 2016) ("The claimant bears the burden of demonstrating that he suffers from a particular listed impairment.").

To be sure, the record also contained contrary evidence. As the Plaintiff points out, his psychologist did reference deficits in socialization, a need for assistance with daily hygiene, and feelings of low self-worth. (ECF No. 22-1, at 6) (citing R. 750). And his pain management doctor occasionally alluded to psychological symptoms as well. (*See, e.g.*, R. 748) (suggesting a possible need for a course of cognitive behavioral therapy "to assist the patient with some enhanced coping mechanisms"). But again, it is the ALJ's job to weigh the evidence, *see Teena H.*, 521 F. Supp. 3d at 291, and as long as substantial evidence supported his conclusions and he committed no legal error, it is this Court's job to affirm his decision. *See Russell*, 448 F. Supp. 3d at 175.

IV. **CONCLUSION**

For the reasons stated above, the Court concludes that the ALJ's decision was supported by substantial evidence and free from legal error. Therefore, the Plaintiff's Motion for Order reversing or remanding the Commissioner's decision (ECF No. 22) is **DENIED**. The Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 25) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 14.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Defendant, and to close the case.

So ordered this 27th day of July, 2022, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge